**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHAWN McGREGOR,

                                    Plaintiff,

            - v -                                                       Civ. No. 9:08-CV-770
                                                                                    (GLS/RFT)
SHERIFF JARVIS, *St. Lawrence County*; BILL RAFERTY,
*Warden, St. Lawrence County Jail*; ROBIN FORBES,
*Corrections Officer, St. Lawrence County Jail*,

                                    Defendants.

**APPEARANCES:**                                          **OF COUNSEL:**

SHAWN McGREGOR
Plaintiff, *Pro Se*
07-A-4121
Upstate Correctional Facility
P.O. Box 2001
309 Bare Hill Road
Malone, New York 12953

HANCOCK, ESTABROOK LAW FIRM               JAMES P. YOUNGS, ESQ.
Attorney for Defendants                               JOHN L. MURAD, JR., ESQ.
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13221

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Shawn McGregor, currently an inmate in Upstate Correctional Facility,

brought this civil rights Complaint, pursuant to 42 U.S.C. § 1983, claiming that his Eighth

Amendment rights were violated when Defendant Robin Forbes sexually assaulted him while he was

being held in the St. Lawrence County Jail, where she was employed as a corrections officer.  Dkt.

No. 1, Compl.  He further claims that Defendants Sheriff Jarvis and ex-Warden Bill Raferty are

liable in their supervisory capacities.  Defendants move for summary judgment pursuant to Federal

Rule of Civil Procedure 56, Dkt. No. 45, which Plaintiff opposes, Dkt. No. 50.  For the reasons that

follow, it is recommended that Defendants' Motion be **granted** and this action be **dismissed**.

## I.  UNCONTESTED MATERIAL FACTS[1]

At the times relevant to the allegations contained in the Complaint, Defendant Gary Jarvis

was the Sheriff of St. Lawrence County, Defendant William Raferty was the Warden of the St.

Lawrence County Correctional Facility, located in Canton, New York, and Defendant Robin Forbes

was a Corrections Officer employed at the St. Lawrence County Correctional Facility.  Dkt. No. 45-

1, Defs.' Statement of Material Facts (hereinafter "Defs.' 7.1 Statement") at ¶¶ 2-4.  Plaintiff Shawn

McGregor first met Defendant Forbes in 2004 during his detention at St. Lawrence; at that time, they

did not have an intimate physical relationship.  *Id*. at ¶ 6.  At some point in 2004, McGregor was

transferred from St. Lawrence to Bare Hill Correctional Facility, where he was housed until he was

paroled at the end of that year.  *Id*. at ¶¶ 7 & 8.  During his stay at Bare Hill, Forbes and McGregor

exchanged written correspondence.  *Id*. at ¶ 7.[2]  McGregor was paroled for one month when he

violated the terms of his parole and returned to St. Lawrence in February or March of 2005.  *Id*. at

¶ 8.

---

[1] Most of the material facts in this case are not in dispute.  Instead, the parties disagree on the interpretation of
these facts as to whether a constitutional violation has occurred.  Where there is a general consensus regarding a material
fact in this case, the Court will only cite to the Defendants' Statement of Material Facts.  We will make specific note of
the few instances where the parties diverge in their respective versions of the facts.

[2] Defendants further assert that Plaintiff and Forbes exchanged letters during his time on parole.  Defs.' 7.1
Statement at ¶ 7.  In his Opposition to Defendants' Statement of Material Facts, McGregor denies having had contact
with Forbes after his 2004 release from Bare Hill.  Dkt. No. 50 at p. 18.  Both cite to Plaintiff's Deposition as support
for this slight discrepancy.  *See* Dkt. No. 45-2, John L. Murad, Jr., Esq., Decl., dated June 18, 2009, Ex. A, Shawn
McGregor Dep., dated Mar. 4, 2009, at pp. 103-07.  The relevant portions of Plaintiff's Deposition are rather vague, but
it appears that Plaintiff testified to communicating with Forbes during his stint at Bare Hill, but not during his month on
parole.

Shortly after his return to St. Lawrence, McGregor was given a work assignment as a "porter," giving him access to certain areas of the jail in order to clean or perform general custodial duties. *Id*. at ¶ 9. At that time, Forbes generally oversaw the female inmates at the facility. *Id*. at ¶ 10. Forbes would ask McGregor to perform porter duties, such as sweeping or mopping, in areas not covered by the facility's security cameras. *Id*. at ¶ 11. McGregor asserts that their relationship morphed from friendly to "flirtatious," until eventually their relationship became intimately physical. *Id*. at ¶¶ 12-14. Forbes initiated the sexual contact, but McGregor did not object to it and "let her do what she wanted to do." *Id*. at ¶ 15. Their sexual contact included "groping, fondling, touching, kissing," and, eventually, oral and vaginal sex. *Id*. at ¶ 16. These encounters took place in several rooms and areas in St. Lawrence that did not have security camera coverage. *Id*. at ¶ 17. As their physical relationship progressed, Forbes obtained minor privileges for McGregor and began bringing him contraband, such as chewing tobacco, cigarettes, and marijuana. *Id*. at ¶ 18.

Forbes did not physically force McGregor to have sex with her, though McGregor maintains that a veiled threat of violence was present. *Id*. at ¶ 19; Dkt. No. 50, Pl.'s Opp'n 7.1 Statement, at p. 19. McGregor also asserts that on one occasion, Forbes implicitly threatened him with some unspecified retaliation if he stopped their sexual relationship; he had sex with her twice after this alleged threat. Defs.' 7.1 Statement at ¶ 23. McGregor also admits that he maintained sexual relations with Forbes so that he would continue to receive contraband. Dkt. No. 45-2, John L. Murad, Jr., Esq., Decl., dated June 18, 2009, Ex. A, Shawn McGregor Dep., dated Mar. 4, 2009, at pp. 208-10, 213, 222, & 238-39. On the date of their second-to-last sexual encounter, McGregor had sex with Forbes so that he could preserve her DNA evidence, purportedly as a means of

protecting himself in the event he was charged with raping her.[3]  Defs.' 7.1 Statement at ¶ 24. Thereafter, McGregor was transferred to Cayuga County Correctional Facility for approximately one month.  *Id.* at ¶ 25.  Upon his return, they engaged in sex on or about July 30, 2005; on that date, McGregor neither objected to nor refused her advances.  *Id.* at ¶¶ 26-27.  During this encounter, Forbes and McGregor were discovered by another corrections officer.  *Id.* at ¶ 28.  An investigation immediately ensued and Forbes, who resigned from her position, was charged with committing a Criminal Sexual Act in the Third Degree, in violation of New York Penal Law § 130.40(1), and Official Misconduct, in violation of Penal Law § 195.00(1).  *Id.* at ¶ 30.  Forbes pled guilty to the misdemeanor of Official Misconduct and was sentenced to a one-year conditional discharge.  *Id.* at ¶ 31.

Although St. Lawrence has a comprehensive inmate grievance procedure, McGregor did not follow this procedure to complain about his relationship with Forbes.  *Id.* at ¶¶ 32, 34, & 36. Instead, prior to being discovered, McGregor wrote a brief letter to then-Warden Raferty asking to meet with him regarding "a problem with one of his correctional officers," but McGregor did not specify in that letter the nature of the problem nor the officer at issue.  *Id.* at ¶¶ 37-39.  McGregor never attempted to communicate with any other official about his relationship with Forbes, or his alleged concerns about it.  *Id.* at ¶ 40.  McGregor never communicated, nor attempted to communicate, with Defendant Jarvis about this matter.  *Id.* at ¶ 41.  After he and Forbes were discovered, McGregor submitted another letter to Defendant Raferty, who then met with Plaintiff

_____

[3] Plaintiff explained at his Deposition that he saved the paper towel Forbes had used to wipe herself and he believed that in the event he were ever accused of raping her, his possession of this "evidence" would somehow prove his innocence. Dkt. No. 45-2, Pl.'s Dep. at p. 158.

and informed him that Forbes had resigned. *Id*. at ¶¶ 43-44.[4]

## II. DISCUSSION

### A.  Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are

---

[4] It is not clear why in his Opposition 7.1 Statement, Plaintiff contests the notion that he wrote Raferty another letter. Dkt. No. 50 at p. 21.  He provides no citation to the record to support his contention, and his testimony before trial substantiates the claim that another letter was written by him asking to meet with Defendant Raferty. *See* Pl.'s Dep. at p. 77.

"more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Prison Litigation Reform Act

### 1. Demonstrating a Physical Injury

The Prison Litigation Reform Act of 1996 (PLRA) imposes several restrictive conditions on the ability of prisoners to maintain federal civil rights actions. In pertinent part, the Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The Second Circuit has held that section 1997e(e) applies to all prisoner suits, including allegations of constitutional violations. *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002).  Section 1997e(e), however, does not preclude the entire lawsuit.  Instead, it merely limits the recovery sought and does not bar injunctive or declaratory relief, nor nominal, punitive, or actual injury (*i.e.*, property loss) damages. *Id*. at 418-19.

In his Complaint, McGregor seeks compensatory and punitive damages.  Neither in his Complaint, Deposition Testimony, nor Opposition to Defendants' Motion does he establish any physical injury he suffered due to the conduct at issue in this litigation.  Because he fails to demonstrate any physical injury suffered as a result of his sexual encounters with Defendant Forbes, his relief is limited to nominal and punitive damages. *See May v. Donneli*, 2009 WL 3049613, at *3-4 (N.D.N.Y. Sept. 18, 2009); *Brito v. Woods*, 2009 WL 2425989, at *8 (N.D.N.Y. Aug. 6, 2009).  Thus, Defendants' Motion should be **granted in part** insofar as any claim for compensatory damages should be **dismissed**.  Nevertheless, the analysis of Plaintiff's claims necessarily proceeds.

### 2.  Exhaustion of Remedies

Other limitations set forth in the PLRA are raised by Defendants in support of their quest for Summary Judgment, namely, Plaintiff's failure to exhaust his administrative remedies.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court dictates that this "requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

The Second Circuit proposed a three-step inquiry district courts should embark upon when an inmate opposes a defendant's assertion that he did not fully exhaust his administrative remedies. First, the Court must determine whether administrative remedies were, in fact, "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d 663, 667-68 (2d Cir. 2004). Next, the Court must inquire whether defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it. *Johnson v. Testman*, 380 F.3d 691, 695 (2d. Cir. 2004). Defendants may also be estopped from raising failure to exhaust if their own actions inhibited the inmate's ability to exhaust. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Finally, if the Court finds that remedies were available, defendants are not estopped and have not forfeited the non-exhaustion defense, and that plaintiff failed to exhaust such remedies, the Court must consider whether "special circumstances" have been raised that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).

First, the Court must decide whether administrative remedies were available to the prisoner. "'Available' means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner." *Shaheen v. Hollins*, 2005 WL 2179400, at *3 (N.D.N.Y. Sept. 7, 2005) (citing *Hemphill v. New York*, 380 F.3d 680, 686-87 (2d Cir. 2004) ("[I]n some circumstances, the behavior of the defendants may render administrative remedies unavailable.")). The "proper test for determining whether ordinary grievance procedures were 'available' [is] whether 'a similarly situated individual of ordinary firmness [would] have deemed them available.'" *McCullough v. Burroughs*, 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (quoting *Hemphill v. New York*, 380 F.3d at 688). In addition, "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing

directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *McCullough v. Burroughs*, 2005 WL 3164248, at *3 (quoting *Hemphill v. New York*, 380 F.3d at 688).

At the time of the events relevant to the Complaint, St. Lawrence had a comprehensive inmate grievance procedure, which is as follows. First, the inmate must attempt to informally resolve any grievance with the officer assigned to his housing unit and then with the tour supervisor. Dkt. No. 45-3, Kevin M. Wells Decl., dated June 16, 2009, Ex. A, St. Lawrence Grievance Procedure at §§ 7032.3(A)(1) & (2). Should those informal means prove ineffective, the inmate may request a grievance form, which shall be completed within five days of the incident complained of. *Id*. at § 7032.3(A)(3). After conducting an investigation, the grievance coordinator will render a decision. *Id*. at § 7032.3(A)(5). If unsatisfied, the inmate may appeal the determination to the jail administrator/sheriff. *Id*. at § 7032.3(A)(6). If the inmate is unsatisfied with that decision, an appeal can be taken to the State Commission of Corrections. *Id*. at § 7032.3(A)(8).

There is no dispute that McGregor did not utilize the grievance procedure outlined above. When interrogated during his Deposition about his efforts to exhaust administrative remedies, McGregor explained the predicament he felt he had been placed in by virtue of his relationship with Forbes and the fact that he felt uncomfortable approaching any other corrections officer. Dkt. No. 45-2, Pl.'s Dep. at p. 82. McGregor's apprehension to speak with another corrections officer informally or to file a formal grievance is understandable and could be probative as to whether administrative remedies were available. However, McGregor has consistently maintained that he satisfied his exhaustion burden by virtue of the letter he sent to Warden Rafferty two weeks prior to the revelation of the sexual relationship. *See* Compl. at ¶ 4(b)(i); Pl's Dep. at pp. 74-75, 77, & 79-

82; Dkt. No. 50, Pl.'s Opp'n at pp. 8, 10, & 13.  Yet, in Plaintiff's own words, the letter written to Defendant Raferty was "nothing extravagant" amounting to "a couple of sentences" indicating that he needed to speak with the Warden because he was "having an issue with one of his correctional officers."  Pl.'s Dep. at pp. 75 & 80-81.  Even drawing a reasonable inference in favor of Plaintiff, the non-movant, that he feared that using the grievance procedure may have posed a risk to his safety, Plaintiff offers no explanation for his failure to better articulate the nature of his problem to the Warden so that greater attention could have been focused on his issue with Forbes.  In this respect, we find that administrative remedies were available to Plaintiff in the form of a more specific letter that could have been provided to Defendant Raferty and Plaintiff failed to utilize this available remedy and has failed to offer a plausible explanation for his failure to do so.

Having made such determination, we must further assess whether Defendants are estopped from raising this defense.  Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants.  *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).  Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted.  *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999) (citations omitted).

Defendants did not plead this affirmative defense in their Answer, and instead raise the issue for the first time in their Motion for Summary Judgment.  In accordance with Federal Rule of Civil Procedure 8(c), affirmative defenses are to be raised in a responsive pleading.  Should a party fail to assert such defense at that time, the defense is normally waived.  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).  Included amongst the waivable affirmative defenses is the failure of a prisoner to exhaust his administrative remedies.  *Johnson v. Testman*, 380

*-10-*

F.3d at 695.  Nevertheless, a district court has the discretion to consider an affirmative defense raised for the first time at the summary judgment stage by construing the request as one to amend the answer, so long as the parties had adequate opportunity to brief the issue.  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (noting that the primary purpose of requiring affirmative defenses be pled is to provide notice and opportunity to respond, which purpose is served through proper briefing).  Here, the Defendants clearly pursued some discovery on the issue of Plaintiff's exhaustion of administrative remedies as demonstrated by the line of questioning posed to Plaintiff at his Deposition.  Furthermore, Plaintiff himself seems to have pursued discovery on this issue, as evidenced by his references to his exhaustion efforts in his Opposition papers.  And, Plaintiff had adequate notice of the Defendants' intention to interpose this defense through their Summary Judgment Motion, to which he did not object, but rather retorts on the merits.  Moreover, there is no real issue of material fact with regard to the measures taken by Plaintiff in an apparent effort to exhaust administrative remedies.  Instead, the issue for this Court is the availability of such remedies and whether such were adequately pursued.  We therefore find that Plaintiff is not prejudiced by Defendants raising this affirmative defense for the first time in their Motion for Summary Judgment.  *See, e.g., Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) ("Absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time."); *Feeney v. Dunham*, 2007 WL 1186046, at *4 (D.Conn. Apr. 18, 2007) ("[I]n this Circuit, it is well established that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise

suffered no prejudice as a result of its late pleading."). We therefore construe this request as one to amend the Answer, and given the merits of the defense, grant the same.

As to whether Defendants have taken other steps to prevent Plaintiff's full exhaustion, we find the record is bereft of any such allegation. Therefore, Defendants are not otherwise estopped from raising this defense.

The last leg of our analysis requires us to consider any other special circumstance to justify Plaintiff's failure to exhaust available administrative remedies. While we can appreciate the sensitive plight Plaintiff found himself in and his inclination to not utilize the grievance program available to him, we are not so convinced that he had no one to turn to as evidenced by the letter he wrote to Defendant Raferty. Plaintiff obviously wanted to seek some aid from Defendant Raferty, yet he failed to give any inkling regarding the seriousness of his quandary, nor has he offered any plausible reason for his failure to do so. Had he been even slightly more forthcoming in his letter to the Warden, perhaps his complaints would have been addressed much sooner. Indeed, as soon as the Warden and Sheriff found out what was going on, immediate action was taken. Therefore, we find that: 1) administrative remedies were available to Plaintiff, but he failed to take advantage of such remedies; 2) Defendants have not waived the defense and are not otherwise estopped from raising it; and 3) no special circumstances exist that would justify Plaintiff's failure to exhaust. Accordingly, Defendants' Motion for Summary Judgment should be **granted** on the basis of Plaintiff's failure to exhaust his administrative remedies.

While we recommend dismissal on this basis, in an abundance of caution, we continue our review of Plaintiff's claims on the merits.

### C.  Plaintiff's Eighth Amendment Claim

#### 1.  Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

McGregor claims that Defendants Raferty and Jarvis failed to prevent or rectify "the unwarranted sexual encounters with Defendant Forbes."  Dkt. No. 50 at p. 3.  Yet, he candidly admitted at his Deposition that his inclusion of Defendants Raferty and Jarvis in this lawsuit is solely due to their positions of authority over Defendant Forbes.  Pl.'s Dep. at pp. 229-30.  The Second Circuit has made clear that an individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985), for the proposition that "mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." ); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

*-13-*

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

There is no dispute that neither Defendant Raferty nor Defendant Jarvis participated directly in the alleged constitutional violation. Instead, to reiterate, Plaintiff seeks to hold them accountable for their purported failure to intervene on his behalf, and/or properly supervise, and/or properly train. It is equally undisputed that neither Defendant Raferty nor Defendant Jarvis had any knowledge of the intimate relationship that developed between McGregor and Forbes, and that once notified of same, immediate action was undertaken in the form of investigations and immediate resignation by Defendant Forbes. As such, we find that Defendants Raferty and Jarvis had no personal involvement in the alleged wrongdoing and recommend **dismissal** of the claims against them. *See Wilson v. David*, 2010 WL 610714, at *4-5 (N.D.N.Y. Feb. 17, 2010).

### 2. Statute of Limitations

Defendants raise the statute of limitations as a further impediment to Plaintiff's suit. In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well. *Id.*; *see also* N.Y.C.P.L.R. § 214(5). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). Under federal law, the claim "accrues when the plaintiff knows

or has reason to know of the harm." *Id*. There also exists the "continuing violations" doctrine, applicable to state and federal claims, wherein as long as the "last act alleged to be part of the ongoing pattern of discrimination occurs within the filing period, allegations regarding earlier acts are not time-barred." *Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn 1992); *see also Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994).

Plaintiff's Complaint was signed on July 4, 2008, and postmarked on July 17, 2008. Dkt. No. 1. The events complained of in that pleading concern the continuous sexual relationship between McGregor and Forbes occurring between March 2005 through July 2005. With the application of the three-year statute of limitations, it appears that all acts complained of prior to at least July 4, 2005, would be precluded from court review, thus leaving approximately two sexual encounters for our Eighth Amendment analysis. However, it would be difficult for this Court to assess the merits of Plaintiff's claim in such a vacuum, given the fact that the genesis and development of the relationship occurred outside the limitations period. Indeed, the relationship between Plaintiff and Forbes was ongoing and, it appears to this Court, that such case is ripe for application of the continuous violation doctrine.[5] Thus, the Court will not limit its review of the events complained of and instead will consider the entire four-to-five month relationship to determine whether a constitutional violation occurred.

### 3. Eighth Amendment Review

To set forth an Eighth Amendment claim, a prisoner must demonstrate that (1) the alleged conduct/punishment is objectively, sufficiently serious; and (2) the prison official acted with a sufficiently culpable state of mind, that is, she acted maliciously and sadistically to cause harm.

---

[5] In any event, given our assessment that no Eighth Amendment claim is presented herein, *see infra* Part II.C.3, our consideration of these earlier dates in no way prejudices Defendants.

*-15-*

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1 (1992). In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir.1997), the Second Circuit acknowledged that sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. 105 F.3d at 860-61. Therein, the Circuit Court stated that,

> [s]exual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm. For this reason, there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison official can be "objectively, sufficiently serious" enough to constitute an Eighth Amendment violation. Moreover, like the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses against society."

*Id.* (internal citations omitted).

One issue raised by the facts and pre-trial testimony is whether Plaintiff consented to the sexual relationship, thereby nullifying or obviating any Eighth Amendment violation. Broadly construing Plaintiff's claims, we believe he counters the consent issue and premises his Eighth Amendment claim upon two theories. First, he asserts that the sexual acts perpetrated by Forbes were forcible in the sense that there existed an innuendo of authority, which made him fear for his safety. Dkt. No. 50 at p. 5 ("Indeed, Plaintiff never actually objected to the sexual encounters with Forbes due to fear for his safety and retaliation."). Second, he believes that, in accordance with New York Penal Law § 130.05, as an inmate, he is incapable of consenting to the sexual acts. *Id.* at pp. 19 & 20 (denying paragraphs numbered twenty (20) and twenty-four (24) in Defendants' Statement of Material Facts on the basis that "Plaintiff cannot consent as a matter of law").

Obviously, corrections officers maintain a position of authority over inmates and implicit in such relationship is an unbalanced playing field with regard to choice. And, it is true that, for criminal prosecution purposes, an inmate is incapable under New York law to consent in sexual

relations.  However, we do not accept the assertion that an acknowledgment of the veracity of these two statements  automatically translates into an acknowledgment of constitutional effrontery.  In *Boddie*, the Second Circuit was careful to announce the rule that "sexual abuse *may* violate contemporary standards of decency" and "*may* meet both the subjective and the objective elements" of the Eighth Amendment test.  *Boddie v. Schneider*, 105 F.3d at 861 (emphasis added).  The Circuit did not hold, as a matter of law, that <u>all</u> sexual contact is violative of the Eighth Amendment, and instead requires a case-by-case analysis of the relevant facts to determine whether the acts complained of are "objectively, sufficiently serious."  *Id*.

In reviewing the relevant facts, we note that, yet again, there exists no real dispute as to the development and escalation of the relationship between Forbes and McGregor.[6]  Forbes is alleged to have initiated the relationship, and was perhaps the sole impetus for actuating the relationship into a sexual *quid pro quo* whereby in exchange for engaging in various acts at her will, McGregor received certain privileges or special treatment, like unfettered use of the phone, as well receipt of contraband, such as cigarettes, chewing tobacco, and marijuana.  Pl.'s Dep at pp. 123-24 & 126.[7]  Plaintiff admits he never refused her sexual advances and, in fact, continued the relationship for the

---

[6] However, Plaintiff explained in his Deposition that he has some difficulty recalling specific dates because the relationship spanned over four months and, once it escalated sexually, the sexual contact occurred on a daily basis.  Pl.'s Dep. at p. 200.

[7] Consider the following exchange at Plaintiff's Deposition:
Q:      Okay.  So . . . she gave you the privileges for coffee and phone before sex?
A:      Yes.
Q:      She offered to bring in cigarettes before sex?
A:      No.
Q:      Okay.  Then once you started having sex, she brought in cigarettes, chew, and marijuana?
A:      Yes.
Pl.'s Dep. at pp. 126-27.

*-17-*

Case 9:08-cv-00770-GLS-RFT   Document 60   Filed 08/20/10   Page 18 of 23

sole purpose of receiving such contraband.[8]   The only instance where Plaintiff alleges to have

rebuked the relationship was after they were almost caught in May 2005 by another corrections

officer, yet, they continued to engage in their shenanigans beyond that incident.  *Id*. at pp. 157-58,

200-01, 206, & 213-14.  At that sole moment of refusal, at which point their sexual relationship had

spanned approximately two to three months, Plaintiff urged Forbes to discontinue their encounters;

she purportedly rebuffed his hesitance and verbally threatened him should he fail to continue.  *Id*.

at p. 157. While Plaintiff claims to have felt coerced into engaging in the relationship, he admits that

no physical force was ever used or threatened to be used against him and that he probably could

have run away from her at any time.  *Id*. at p. 176.  Instead, Plaintiff asserts that it was the innuendo

of her status of authority that she held over him that made him feel like he was being forced to

engage in these acts with her.  *Id*.  Yet, he also admits that only on the occasion when they were

almost discovered did he perceive her words to be of a threatening nature, whereas other times he

thought she might be "pulling [his] leg."  *Id*. at p. 223.

       Even when viewing the uncontested material facts in a light most favorable to Plaintiff, the

non-movant, it appears by all accounts that his sexual relationship with Forbes was consensual.

Plaintiff does not contest the veracity of this observation, and in fact, much of his testimony before

---

[8] Consider the following exchanges at the Deposition:
    Q:        Did you push her hand away?
    A:        I didn't say no.  I didn't – I didn't allow her to, I didn't say no, I didn't say anything.  I just
              basically – I let her do what she wanted to do.
Pl.'s Dep. at p. 149.
    Q:        So, then, from that period of time where you didn't say no, is it – is it your testimony that you
              – you had sex with her only for recovery of these items?
    A:        Yeah, it was basically coercion.  I mean give – 'I'll bring you in this, I'll give you that, do
              that, just do what I want.
*Id*. at p. 166.
    Q:        So, . . . from your perspective, the only reason you had sex with [Forbes], up until the time
              you said no, was for purposes of obtaining the – the privileges and contraband.
    A:        Absolutely.
*Id*. at p. 213.

*-18-*

trial supports it.  Instead, he invokes New York Penal Law § 130.05(3)(f) for the proposition that

he, as an inmate, is incapable of consenting.  The Court could only find one case in this Circuit that

supports Plaintiff's thesis, *Cash v. County of Erie*, 2009 WL 3199558, at *1-2 (W.D.N.Y. Sept. 30,

2009), wherein the plaintiff complained that while a pre-trial detainee in the Erie County Holding

Center, she was assaulted and raped by a guard, who thereafter pled guilty to a charge of third

degree rape, in violation of New York Penal Law § 130.25(1), an "E" felony.  The court ruled that,

as an inmate, Cash was incapable of consenting to the alleged sexual assault.  *Id.* at *2 (citing N.Y.

PENAL LAW § 130.05(3)(f) & *Carrigan v. Davis*, 70 F. Supp. 2d 448, 452-53 (D. Del. 1999)).  The

*Cash* case, however, provides little guidance for this Court.  First, the *Cash* court, in ruling on a

motion for default against the offending officer, was not presented with a full record, as contrasted

with the exhaustive record and general consensus on the facts before this Court.  Second, the

seemingly horrendous facts in *Cash*, wherein an inmate alleged rape and forcible sexual assault, are

distinguishable from our case wherein McGregor admits he desired to maintain the sexual

relationship so that he would receive continued benefits, such as contraband.[9]  For these reasons, we

are not swayed by Plaintiff's argument that just because for criminal prosecution purposes an inmate

is considered incapable of providing consent, this necessarily equates to, in terms of civil rights

vindication, a finding that the "consensual" relationship between him and Forbes *per se* violated the

---

[9] In contrast, a case similar to our facts emerged in the Western District prior to *Cash*: *Fisher v. Goord*, 981 F. Supp. 140 (W.D.N.Y. 1997).  In *Fisher*, the court ruled, after holding a lengthy hearing, that Amy Fisher's admittedly consensual relationship with multiple prison guards while she was an inmate did not constitute an Eighth Amendment violation.  *Id.* at 174.  The *Cash* court distinguished *Fisher* by pointing out that it pre-dated the enactment of New York Penal Law § 130.05(3)(f), which included inmates amongst the list of individuals who cannot consent, as a matter of law, to sexual relations, thus rendering such contact with them a crime under New York Penal Law § 130.25(1).  *Cash v. County of Erie*, 2009 WL 3199558, at * 2.  The *Fisher* court took note of the enactment of New York Penal Law § 130.05(3)(f), but stated that it antedated the events raised in the complaint, which the court interpreted as evidence that prior to that point, inmates could provide consent.  *Fisher v. Goord*, 981 F. Supp. at 175.  However, the *Fisher* court stopped short of stating that the recent enactment of the law propelled any sexual acts between inmates and prison guards into constitutionally violative dimensions.

Federal Constitution.

The closest Second Circuit case on point is *Boddie v. Schneider*, 105 F.3d 857 (2d Cir.1997). At issue in *Boddie* were discreet incidents between Lloyd Boddie and a female corrections officer amounting to inappropriate touching and verbal harassment. *Id.* at 859-60. Ultimately, the Second Circuit found that none of the incidents, either singularly or cumulatively, were "objectively, sufficiently serious," thus, no Eighth Amendment violation was found to have occurred. *Id.* at 861. Cases following *Boddie* tend to find Eighth Amendment violations only in the most egregious of circumstances. *Compare Wylie v. Bedford Hills Corr. Facility*, 2008 WL 2009287, at *2 (S.D.N.Y. May 8, 2008) (allowing allegations that a male nurse drugged and sexually assaulted a female inmate to survive a frivolous inquiry under 28 U.S.C. § 1915(e)(2)(B)(i)), *with Tafari v. Paul*, 2009 WL 3260075 at *2-3 (dismissing prisoner's claims of sexual molestation during pat frisk as failing to rise to an Eighth Amendment violation); *see also Morris v. Eversley*, 205 F. Supp. 2d 234, 242-43 (S.D.N.Y. 2002) (denying qualified immunity where female inmate alleged that a male corrections officer entered her cell one night and sexually assaulted her and that such conduct was part of an ongoing pattern and practice of male officers engaging in sexual contact with female inmates).[10] We could not locate cases within this jurisdiction with facts similar to ours, that being an accusation that

---

[10] Consider, also, for example, the multitude of cases wherein allegations of sexual abuse in the form of inappropriate groping or touching during pat frisks were found not to have implicated the Eighth Amendment:

> *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); *Williams v. Keane*, No. 95 Civ. 0379, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmates genitals during pat frisk failed to state constitutional claim).

*Murray v. Bushey*, 2009 WL 498144, at *6 (N.D.N.Y. Feb. 26, 2009).

an apparent consensual relationship between an inmate and a corrections officer violated the Eighth

Amendment.  However, several other courts in other jurisdictions have unequivocally stated that a

consensual sexual relationship, while inappropriate, does <u>not</u> establish a *per se* Eighth Amendment

violation.  *See Hall v. Beavin*, 202 F.3d 268, 1999 WL 1045694, at *1 (6th Cir. 1999) (unpublished

decision) (finding no merit to plaintiff's Eighth Amendment claim where the "evidence established

that [plaintiff] voluntarily engaged in a sexual relationship with [defendant]); *Freitas v. Ault*, 109

F.3d 1335, 1339 (8th Cir. 1997) (holding that "welcome and voluntary sexual interactions, no matter

how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth

Amendment"); *Wood v. Idaho Dep't of Corr.*, 2009 WL 3104036, at *3-6 (D.Idaho Sept. 22, 2009)

(holding that inmate could not base constitutional claim on consensual sexual encounters); *Stubbs

v. DeRose*, 2007 WL 776789, at *7 (M.D. Pa. Mar. 12, 2007) ("Consensual sex between two adults

does not constitute cruel and unusual punishment simply because it occurs within the walls of a

prison."); *Doe v. Cunningham*, 2007 WL 990141, at *2 (W.D. Va. Mar. 29, 2007) ("This Court is

persuaded that the Eighth Circuit['s decision in the *Freitas* case] was correct when it found that

welcome, voluntary attentions are not violations of a prisoner's rights, even when they are prohibited

by state law); *but see Carrigan v. Davis*, 70 F. Supp. 2d 448, 460 (D. Del. 1999) (specifically

discounting the holdings in *Freitas* and *Fisher* regarding an inmate's ability to consent and finding

that any sex with inmates is a *per se* violation of the Eighth Amendment).[11]  After reviewing the

caselaw, we join the general consensus in noting that *any* sexual contact between a prison guard and

an inmate is inappropriate and serves no legitimate penalogical purpose.  However, we find that the

---

[11] It is worth noting that in *Carrigan*, the plaintiff, an inmate at the Women's Correctional Institute, alleged
that defendant Davis, a correctional officer, engaged in vaginal intercourse with her against her will.  *Carrigan v. Davis*,
70 F. Supp. 2d at 451.

*-21-*

facts in this case do not rise to the level of an Eighth Amendment violation in that the conduct at issue, though inappropriate, is not objectively sufficiently serious and did not cause pain as contemplated by that Amendment.[12]   Thus, we recommend **granting** Defendants' Motion and **dismissing** this entire case.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 45) be **GRANTED** and this entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

---

[12] *See Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (concluding that a "female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury[,]" and thus is not actionable under the Eighth Amendment); *Edge v. Ferrell*, 2008 WL 942038, at *7 (S.D. Ala. Apr. 7, 2008) (citing *Freitas v. Auli*, 109 F.3d at 1339 for the proposition that welcome, voluntary sexual interactions do not constitute pain); *Petty v. Venus Corr. Unit*, 2001 WL 360868, at *2 (N.D. Tex. Apr. 10, 2001) (dismissing inmate's § 1983 claim because there was no showing by plaintiff that the alleged sexual harassment caused him pain); *Phillips v. Bird*, 2003 WL 22953175, at *6 (D. Del. Dec. 1, 2003) (finding that, based on stipulated facts, the consensual sexual relationship between an inmate and corrections officer did not cause objectively serious injury or pain, and further stating that "[c]onsensual sex between two adults does not constitute cruel and unusual punishment simply because it occurs within the walls of a prison.").

Date:   August 20, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge